UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEFFREY M. DUBAN, individually and on behalf of all others similarly situated,

Plaintiff,

-against-

SCANDINAVIAN AIRLINES SYSTEM, INC. and SCANDINAVIAN AIRLINES OF NORTH AMERICA, INC.,

Defendants.

21-CV-4524 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

In late 2019, Plaintiff Jeffrey M. Duban bought two roundtrip plane tickets to travel with his wife to Oslo, Norway. They were due to depart on July 20, 2020. But before they could take their trip, the Covid-19 pandemic emerged—and in late June, Defendants Scandinavian Airline System and Scandinavian Airlines of North America, Inc. informed Plaintiff that his flights were canceled. He immediately began asking for a refund. For months, he was unsuccessful.

Then, in April 2021, Plaintiff filed the instant lawsuit—a putative class action alleging claims for breach of contract, conversion, and unjust enrichment. Days later, Plaintiff received a refund. Defendants contend that Plaintiff received a complete refund: they argue that his original purchase, made through a third-party travel website, was in Euros, and that Plaintiff was refunded the complete value of his purchase in Euros. Plaintiff, by contrast, states that he paid for his tickets in U.S. dollars—and that his refund came up $181.47 short.

Now, Defendants move to dismiss Plaintiff's lawsuit in its entirety. They argue that his claims are moot, his claims against Scandinavian Airlines of North America, Inc. are improper,

his claims are entirely preempted by the Airline Deregulation Act, and he fails to state any of his claims. Separately, Defendants also move to strike Plaintiff's class claims.

As described further below, the Court finds that Plaintiff's claims are not moot because there is still relief that Plaintiff could obtain in this action; that his claims against Scandinavian Airlines of North America, Inc. may proceed because it is on notice of the claims against it and to find otherwise would require the Court to look to documents outside of the pleadings; that his conversion and unjust enrichment claims are preempted by federal law, but that his breach of contract claim is not; that he plausibly states a breach of contract claim; and that because of the current stage of this litigation, his class claims survive. Accordingly, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss.

**BACKGROUND**

The following facts are, unless otherwise noted, taken from the Complaint ("Compl."), ECF No. 1-1, and presumed to be true for the purposes of this motion. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). As explained below, the Court also considers the airline tickets and Conditions of Carriage ("COC") relevant to this dispute, which Defendants Scandinavian Airline System, ("SAS") and Scandinavian Airlines of North America, Inc. ("SANA") (collectively, "Defendants") filed alongside their motion, as well as certain information provided by both parties in sworn declarations. *See infra* Section I.

In November 2019, Plaintiff Jeffrey M. Duban ("Plaintiff") bought two round-trip plane tickets for himself and his wife to travel from Newark, New Jersey to Oslo, Norway. ¶¶ 27–28; ECF No. 20 ("Mossberg Decl.") ¶ 11. The couple were due to leave on July 20, 2020, and return on July 28, 2020. ¶ 28. Plaintiff purchased the tickets through a third-party agent called Gotogate, Inc. ("Gotogate") and paid $2,178.03. ¶¶ 29–30 (he paid $1,142.05 for one ticket and

$1,035.98 for the second ticket). According to SAS, however, Plaintiff "paid Gotogate €900.97 for one ticket (or its equivalent in US dollars) and €851.97 for the other ticket"—for a total of €1,752.94. Mossberg Decl. ¶ 16. SAS's records also show that Plaintiff "paid US$120 directly to SAS in excess baggage fees." *Id.* ¶ 17. In turn, according to SAS, Gotogate "used cash (Euros) to purchase the two round-trip tickets from SAS on Plaintiff's behalf." *Id.* ¶ 18.

In late June 2020, Defendants informed Plaintiff that his flights were being canceled due to the Covid-19 pandemic. ¶ 31. Plaintiff immediately began inquiring about obtaining a refund. ¶ 32. First, he asked Defendants for a refund but was told to contact Gotogate. ¶ 33. Then, he asked Gotogate—but was told to speak with Defendants. ¶ 34. This back-and-forth continued for about one month. ¶ 35. Finally, Defendants explained to Plaintiff that if he was dealing with an "uncooperative agent," they would send him an electronic form that he could submit to receive a direct refund. ¶ 36. Plaintiff submitted the electronic form in or around mid-August 2020. ¶ 37. When he submitted the form, he received a brief "pop-up" that indicated "We got it." *Id.* In a subsequent phone call, Defendants explained to Plaintiff that he would receive a refund within four months of submitting the form. *Id.* In November 2020, SAS refunded Plaintiff $120—the amount he had paid SAS directly from his credit card in excess baggage fees. Mossberg Decl. ¶ 28.

On or about January 27, 2021—approximately five months after submitting the online form—Defendants sent Plaintiff a link to process the rest of his refund. ¶ 38. The link did not function. *Id.* Three days later, on January 30, 2021, Plaintiff emailed Defendants to report that the link did not work. ¶ 39. Plaintiff received no response to his email. *Id.* On or about February 1, 2021, Plaintiff reported the link malfunction to one of Defendants' employees, who said that

he would call Defendants' Refund Department on Plaintiff's behalf. ¶ 40. Plaintiff did not hear back. *Id.*

Some time later, Plaintiff tried to open the link again—and it worked. ¶ 43. However, the link sent Plaintiff to a webpage that requested his bank account information, using an International Bank Account Number (IBAN). *Id.* Plaintiff claims that this "was a ploy by Defendants" because he paid by credit card and credit card refunds are "universally credited back to the originating card." ¶ 44. Later that February, SAS collected Plaintiff's banking details over the telephone. Mossberg Decl. ¶ 31.

On April 14, 2021, Plaintiff filed the instant lawsuit in New York state court. Compl. Defendants were served on April 19, 2021. ECF No. 1 ¶ 2. Days later, Plaintiff received a refund for his two tickets. *See* Mossberg Decl. ¶ 32 (explaining that Plaintiff was paid on April 21, 2021); ECF No. 24 ("Duban Decl.") ¶ 2 (explaining that Plaintiff was paid "on or about" April 22, 2021). According to Defendants, Plaintiff was sent "€1,752.94—the full amount that he paid for his two round-trip tickets, including fees for extra legroom." Mossberg Decl. ¶ 32. According to Plaintiff, however, he was refunded $1,996.56—or $181.47 less than the $2,178.03 total he had originally paid for his tickets. Duban Decl. ¶¶ 2–3.

On May 19, 2021, Defendants removed the case to this District, where it came before Judge Ronnie Abrams. ECF No. 1. On June 25, 2021, Judge Abrams ordered that discovery be held "in abeyance pending the Court's adjudication of [Defendants' forthcoming] motion to dismiss, and in light of the fact that Plaintiff 'does not oppose staying discovery pending resolution of the motion to dismiss.'" ECF No. 15. On September 17, 2021, Defendants filed their motion to dismiss, ECF No. 18; memorandum of law, ECF No. 19 ("MTD"); and two declarations in support of their motion, Mossberg Decl.; ECF No. 21 ("Brennan Decl."). Plaintiff

opposed the motion on October 20, 2021. ECF No. 26 ("Opp."). Plaintiff also filed two declarations in support of his opposition. Duban Decl.; ECF No. 25 ("Koppell Decl."). Defendants then replied on November 3, 2021. ECF No. 27 ("Reply").

The following year, the Court was notified that both Defendants "filed voluntary petitions for relief under [C]hapter 11" of the United States Bankruptcy Code. ECF No. 30. Judge Abrams therefore stayed the case "pending further order of this Court." ECF No. 31 (citing 11 U.S.C. § 362). On July 28, 2023, while still stayed, the case was transferred to the undersigned. ECF No. 32. The case remained stayed until last year, when the Court directed the parties to provide a status update regarding the bankruptcy proceedings and whether the case should remain stayed. The parties then confirmed that Defendants' bankruptcy proceedings had ended and suggested that the Court lift the stay and resolve the pending motion to dismiss. ECF Nos. 33, 35. The Court did so and now rules on the pending motion to dismiss.

## LEGAL STANDARDS

The Court sets forth the applicable legal standards under Federal Rules of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim).

### I. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The party "asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* (internal citation omitted). Thus, in resolving a motion to dismiss for lack of subject matter jurisdiction, the court "must accept as true all material factual allegations in the complaint" but "may not draw any jurisdictional inferences in favor of the plaintiff." *Blecher v. Holy See*, 146 F.4th 206, 216 (2d

Cir. 2025) (quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004); citing *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).

"A Rule 12(b)(1) motion may be either facial or fact-based." *Lugo v. City of Troy*, 114 F.4th 80, 87 (2d Cir. 2024). "[A] defendant is permitted to make a fact-based Rule 12(b)(1) motion" by "proffering evidence beyond the [p]leading[s]," in opposition to which a plaintiff must submit their own controverting evidence when the evidence reveals "factual problems in the assertion of jurisdiction." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (cleaned up). "However, the plaintiffs are entitled to rely on the allegations in the [p]leading if the evidence proffered by the defendant is immaterial." *Id.* "Where, as here, the defendant moves for dismissal under Rule 12(b)(1), as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Wise v. Combe Inc.*, 724 F. Supp. 3d 225, 232–33 (S.D.N.Y. 2024) (quoting *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019)).

## II. Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550

U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id*. at 679.

## DISCUSSION

This discussion proceeds in seven parts. First, the Court explains why it considers Plaintiff's airplane tickets, Defendants' Conditions of Carriage, and additional facts about Plaintiff's refund in evaluating this motion—but does not consider extraneous material that describes SAS and SANA's corporate relationship. Second, the Court determines that Plaintiff's claims are not moot because it is still possible for the Court to grant effectual relief. Third, the Court concludes that Plaintiff's claims against SANA may proceed because both SAS and SANA are implicated in the Complaint's claims, and both are properly on notice of those claims. Fourth, the Court analyzes which of Plaintiff's claims are preempted by the Airline Deregulation Act ("ADA") and concludes that Plaintiff's conversion and unjust enrichment claims are preempted, but that his breach of contract claim is not. Fifth, the Court finds that Plaintiff plausibly alleges a breach of contract claim. Sixth, Defendants' attempt to strike Plaintiff's class claims is procedurally premature; therefore, Plaintiff's class claims survive. Lastly, the Court denies Plaintiff leave to amend the dismissed claims.

### I. Material Considered by the Court

Plaintiff and Defendants have filed additional declarations and exhibits to support their briefing. Because these documents extend beyond the Complaint itself, the Court must evaluate whether it may consider these materials in deciding this motion.

Plaintiff has submitted a short declaration from himself (the "Duban Declaration"), which details when and how much he was paid by Defendants after he brought this lawsuit. Duban Decl. He has also submitted a declaration from his attorney (the "Koppell Declaration"), which includes five exhibits. Koppell Decl. The first exhibit contains the Affidavits of Service—demonstrating that Defendants were served the summons and Complaint on April 19, 2021. ECF No. 25-1. The next four exhibits relate to the question—discussed in more detail below—of whether Defendant SANA is properly a defendant to this action: Exhibit 2 is a sworn declaration from another lawsuit, ECF No. 25-2; Exhibit 3 is documentation filed by SANA with the California Secretary of State, ECF No. 25-3; Exhibit 4 is a published interview with one of SAS's employees, ECF No. 25-4; and Exhibit 5 is a copy of that employee's LinkedIn profile, ECF No. 25-5.

Defendants, for their part, have filed two declarations alongside their motion to dismiss. The first (the "Mossberg Declaration"), from SAS's Head of Customer Service Anna Mossberg, details the company's interactions with Plaintiff as well as its cancellation and refund policies—including its experiences issuing refunds during the Covid-19 pandemic. Mossberg Decl. Attached to the Mossberg Declaration, Defendants appended a copy of Plaintiff's round-trip ticket and the Fare Rules that accompany it, ECF No. 20-1, as well as a copy of SAS's Conditions of Carriage, ECF No. 20-2 ("COC"). Second, Defendants filed a declaration from SANA's Director of Finance and Human Resources, James Brennan (the "Brennan Declaration"), which sheds light on the corporate relationship between SANA and SAS. Brennan Decl.

"A court adjudicating a motion to dismiss under Rule 12(b)(6) 'may review only a narrow universe of materials.'" *Khatskevich v. Shapiro*, No. 23-CV-9160 (KPF), 2025 WL 833872, at *5

(S.D.N.Y. Mar. 17, 2025) (quoting *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016)). Namely, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). "For a document to be considered integral to the complaint, the plaintiff must 'rel[y] on the terms and effect of a document in drafting the complaint . . . mere notice or possession is not enough.'" *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (quoting *Chambers*, 282 F.3d at 153).

"Where a district court considers material outside of the pleadings that is not attached to the complaint, incorporated by reference, or integral to the complaint, the district court, to decide the issue on the merits, must convert the motion into one for summary judgment." *AECOM*, 19 F.4th at 106 (citing *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) ("'[W]hen matters outside the pleadings are presented in response to a 12(b)(6) motion,' a district court must either 'exclude the additional material and decide the motion on the complaint alone' or 'convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.'" (quoting *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988))). "This requirement 'deters trial courts from engaging in factfinding when ruling on a motion to dismiss and ensures that when a trial judge considers evidence [outside] the complaint, a plaintiff will have an opportunity to contest defendant's

relied-upon evidence by submitting material that controverts it.'" *AECOM*, 19 F.4th at 106 (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

At the same time, as mentioned above, "[i]n considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), federal courts need not accept as true contested jurisdictional allegations." *Ward v. Bank of New York*, 455 F. Supp. 2d 262, 265 (S.D.N.Y. 2006) (citation and internal quotation marks omitted). "Rather, a court may resolve disputed jurisdictional facts by referring to evidence outside the pleadings." *Id.* (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)); *see also Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). In so doing, a court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but . . . may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). "A court may also consider matters of which judicial notice may be taken." *Next Generation Tech., Inc. v. Jaddou*, No. 21-CV-1390 (PGG), 2023 WL 2570643, at *3 (S.D.N.Y. Mar. 18, 2023) (cleaned up).

Here, the Court must weigh whether to consider four categories of materials. First, the parties put forth additional facts to describe Plaintiff's refund—adding information about events that took place after Plaintiff filed his Complaint. *See* Mossberg Decl.; Duban Decl. These facts are contained in the Duban and Mossberg Declarations. *See id.* Because these facts are central to the parties' mootness—and thus jurisdictional—arguments, the Court considers them in its analysis. *See J.S. ex rel. N.S.*, 386 F.3d at 110.

Second, Defendants offer Plaintiff's ticket and SAS's Conditions of Carriage as exhibits to the Mossberg Declaration. ECF Nos. 20-1–20-2. Plaintiff's ticket and its attached Fare Rules are plainly incorporated by reference into the Complaint, so the Court will consider them.

*DiFolco*, 622 F.3d at 111. SAS's Conditions of Carriage, however, present a slightly more complicated question: Plaintiff does not mention the Conditions of Carriage at all in his Complaint. *See generally* Compl. However, a plaintiff may make a document integral to his Complaint by "rel[ying] heavily upon" not just its "terms," but its "effect"—and that is the case here. *Chambers*, 282 F.3d at 153 (quoting *Int'l Audiotext Network, Inc.*, 62 F.3d at 72). Although Plaintiff does not even allude to the Conditions of Carriage in his Complaint, he necessarily relies heavily upon its effect—because SAS's Conditions of Carriage necessarily bear on Plaintiff's contract with Defendants.[1] *See id.* Additionally, "[o]n a motion to dismiss for breach of contract, courts look not only at the sufficiency of the complaint but also at the contract itself, which by definition is integral to the complaint." *Axiom Inv. Advisors, LLC ex rel. Gildor Mgmt., LLC v. Deutsche Bank AG*, 234 F. Supp. 3d 526, 533 (S.D.N.Y. 2017) (citing *Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) ("Where, as in this case, certain contracts are integral to the complaint, we also consider those documents in deciding the merits of the motion.")). Here, both parties construe the Conditions of Carriage as incorporated in, and thus integral to, Plaintiff's contract claims. *See, e.g.*, MTD at 4–5, 8, 10–15; Opp. at 4–7, 13–16. The Conditions of Carriage are therefore "integral" to the Complaint, *AECOM*, 19 F.4th at 106, and the Court will consider them. *See* COC.

Third, the court could—but need not—take judicial notice of the Affidavits of Service because service is not at issue in this case. See ECF No. 25-1.

Fourth, the Court will not consider the Brennan Declaration or Exhibits 2–5 to the Koppell Declaration, which all pertain to SANA's corporate relationship with SAS. *See* Brennan

---

[1] The parties dispute the extent of this effect, but neither disputes that the Conditions of Carriage do have an effect on Plaintiff's contract with Defendants.

Decl.; ECF Nos. 25-2–25-5. The parties ask the Court to consider these materials with respect to Defendants' 12(b)(6) motion—but none are incorporated by reference into the Complaint. *See* MTD at 13, 15–18; *see generally* Compl. Nor are these documents integral to the Complaint. *See id.* As Defendants themselves point out, "only two paragraphs" in the Complaint "reference the two entities [SAS and SANA] individually." MTD at 17 (citing Compl. ¶¶ 6–7). And in those paragraphs, Plaintiff simply states that SAS "is a foreign business corporation with a principal office for the transaction of business in the United States at 301 Route 17 North, Rutherford, New Jersey, 07070," and that SANA "is a domestic business corporation authorized to do business in New York with a principal executive office located at 301 Route 17 North, Rutherford, New Jersey 07070." Compl. ¶¶ 6–7.

Plaintiff therefore does not rely on any of the materials he later puts forward—the declaration from another lawsuit, SANA's California Secretary of State filings, the published interview with one of SAS's employees, or that employee's LinkedIn profile—to make out his claims. *See* Compl. Similarly, Plaintiff does not rely on any of the details Defendants put forth delineating SAS and SANA's corporate structure in order to advance his claims. *See id.* To consider these extraneous materials at this stage, then, would be to engage in the very kind of fact-finding the Federal Rules of Civil Procedure seek to prevent. *See AECOM*, 19 F.4th at 106. Accordingly, the Court will not consider the material extraneous to the Complaint that describes SAS and SANA's corporate relationship.

## II. Plaintiff's Claims Are Not Moot

Next, the Court considers Defendants' threshold argument that Plaintiff's individual and class claims are moot. MTD at 19–20. "[S]ubject matter jurisdiction is an unwaivable *sine qua non* for the exercise of federal judicial power." *Curley v. Brignoli, Curley & Roberts Assocs.*, 915

F.2d 81, 83 (2d Cir. 1990). "Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper when the district court lacks the statutory or constitutional power to adjudicate it." *Ford v. D.C. 37 Union Loc. 1549*, 579 F.3d 187, 188 (2d Cir. 2009) (per curiam) (internal quotation marks omitted). "[W]hen a case becomes moot, the federal courts lack subject matter jurisdiction over the action." *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) (internal citation omitted).

"To sustain jurisdiction, a dispute must not only be alive when filed, but throughout its pendency." *Doe v. McDonald*, 128 F.4th 379, 385 (2d Cir. 2025) (citing *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–91 (2013)). "A case is moot 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome,' making it 'impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Id.* (quoting *Already, LLC*, 568 U.S. at 91; and then *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 109 (2d Cir. 2016) (per curiam)).

Here, Plaintiffs' individual and class claims are not moot because it is still possible for the Court to grant effectual relief. Plaintiff contends that Defendants still owe him money—specifically, the $181.47 he says he is due to complete his refund. Duban Decl. ¶¶ 2–3. Although Defendants argue that they reimbursed Plaintiff in full by paying him in Euros, Plaintiff explains that he paid for his tickets in U.S. dollars—and that Defendants' refund came up short of that dollar amount. *See id.*; Compl. ¶ 30; Mossberg Decl. ¶ 32. Defendants, for their part, do not present sufficient evidence to demonstrate that Plaintiff has been fully reimbursed; they concede that Plaintiff "paid Gotogate €900.97 for one ticket (*or its equivalent in US dollars*) and €851.97 for the other ticket." Mossberg Decl. ¶ 16 (emphasis added). Because the Court "must accept as

true all material factual allegations in the complaint," at this stage, Plaintiff's claim that he is still owed $181.47 remains live. *Blecher v. Holy See*, 146 F.4th at 216 (internal citations omitted).

Also, a "refund of [Plaintiff's] ticket price does not provide complete relief." *Sholopa v. Turk Hava Yollari A.O., Inc.*, 595 F. Supp. 3d 257, 262 (S.D.N.Y. 2022). "If a class is certified and the plaintiffs win, [Plaintiff] would be entitled to an additional award as a class representative." *Id.* Accordingly, even "[t]he prospect of an additional award keeps [his] claim from being moot." *Id.*

At this stage, then, Plaintiff's individual and class claims are not moot.

## III. Plaintiff's Claims Against SANA May Proceed

The Court next considers Defendants' argument that Plaintiff "impermissibly conflated SAS and SANA throughout his Complaint," warranting the "dismissal of this entire action" pursuant to Federal Rule of Civil Procedure 8(a). MTD at 13; *see* MTD at 15–18. The Court also considers Defendants' related argument that it should, at a minimum, dismiss Plaintiff's breach of contract claims against SANA because Plaintiff was never in privity of contract with SANA. MTD at 13.

"The key to Rule 8(a)'s requirements is whether adequate notice is given," which "will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial." *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004) (citation omitted). Here, Plaintiff's Complaint "satisfies the requirements of Rule 8(a) because it gives [Defendants] fair notice of the basis for [Plaintiff's] claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); *see Ritchie v. N. Leasing Sys., Inc.*, 14 F. Supp. 3d 229, 237 (S.D.N.Y. 2014) (recognizing that a complaint meets

Rule 8(a)'s requirements even when "it includes certain allegations against 'Defendants' collectively") (collecting cases).

Plaintiff alleges that both Defendants were involved in the events he describes in his Complaint: that Plaintiff bought a plane ticket, had his flight canceled, and now seeks a refund. *See* Compl. Particularly because the Court does not take into account Defendants' extraneous briefing about SAS and SANA's corporate relationship, both SAS and SANA are plausibly implicated in these allegations. *See supra* Section I; *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Most importantly, both SAS and SANA are properly on notice of the claims Plaintiff alleges against each of them. *See Swierkiewicz*, 534 U.S. at 514; Compl.

Relatedly, because the Court does not consider Defendants' briefing about SAS and SANA's corporate relationship, accepts Plaintiff's allegations as true, and draws reasonable inferences in Plaintiff's favor, the Court cannot conclude at this stage that Plaintiff was never in privity of contract with SANA. *See supra* Section I; *Goldstein v. Pataki*, 516 F.3d at 56.

Accordingly, Plaintiff's claims against SANA may proceed.

## IV. Plaintiff's Breach of Contract Claim Is Not Preempted; His Conversion and Unjust Enrichment Claims Are Preempted

Next, Defendants argue that Plaintiff's claims are entirely preempted by the Airline Deregulation Act. MTD at 6–9. "In 1978, Congress enacted the Airline Deregulation Act in an attempt to deregulate domestic air travel." *Hahn v. JetBlue Airways Corp.*, 738 F. Supp. 3d 229, 257 (E.D.N.Y. 2024) (internal citation omitted). "To ensure that the States would not undo federal deregulation with regulation of their own, the ADA included a preemption clause." *Am. Airlines Inc. v. Wolens*, 513 U.S. 219, 222 (1995) (internal quotation marks and citation omitted). Accordingly, pursuant to the ADA, "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air

carrier. " 49 U.S.C. § 41713(b)(1). The ADA's preemptive scope is broad: "State enforcement actions having a connection with or reference to airline 'rates, routes, or services' are pre-empted." *Morales v. Trans World Airlines Inc.*, 504 U.S. 374, 384 (1992). Preemption applies whether the state statute specifically targets the airline industry or is a "law[] of general applicability." *Id.* at 386.

The ADA's preemption clause does not, however, "shelter airlines from suits . . . seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." *Wolens*, 513 U.S. at 228. These lawsuits "alleg[e] no violation of state-imposed obligations," so they are not preempted by the ADA. *Id.* Instead, the "terms and conditions airlines offer and passengers accept are privately ordered obligations," meaning "[a] remedy confined to a contract's terms simply holds parties to their agreements." *Id.* at 228–29. "This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Id.* at 233. "Courts often refer to this rule as the '*Wolens* exception.'" *Hahn*, 738 F. Supp. 3d at 258.

To evaluate whether a "claim falls within the *Wolens* exception, Courts must determine (1) that the claim alleged only concerns a self-imposed obligation within the parties' contract; and (2) no enlargement or enhancement of the contract occurs based on state laws or policies external to the agreement." *Id.* at 258 (citing *Wolens*, 513 U.S. at 233). In the breach-of-contract context, the Second Circuit has explained that the *Wolens* exception applies "if the parties' contract, interpreted in the light most favorable to plaintiffs, could reasonably be read to find that the alleged injury was 'within the scope of [the airline]'s contractual obligations.'" *Id.* at 260 (quoting *Cox v. Spirit Airlines, Inc.*, 786 F. App'x 283, 285 (2d Cir. 2019)). In these situations,

"the ADA does not preempt [a plaintiff's] breach-of-contract claims." *Cox*, 786 F. App'x at 285. This rule applies "even if [those claims] relate to prices, routes, or services." *Sholopa*, 595 F. Supp. 3d at 264 (citing *Cox*, 786 F. App'x at 285); *see Hahn*, 738 F. Supp. 3d at 260 ("Although *Cox* is an unpublished opinion, this Court must view it as highly persuasive authority."); *id.* (calling *Cox* "the governing approach in this Circuit").

Here, then, Plaintiff's breach of contract claim is not preempted by the ADA. The parties' disagreement over what their contract entails mirrors their disagreement over what refund, if any, Plaintiff is due. *Compare* MTD at 8 *with* Opp. at 12–13. On the one hand, Defendants argue that granting Plaintiff relief on his breach of contract claims "would necessarily require the Court to enlarge [their] contractual duties" because Plaintiff's ticket was non-refundable. MTD at 8. On the other hand, Plaintiff argues that "the Conditions of Carriage between Plaintiff (as well as the putative class) and the Defendants have numerous provisions that require Defendants to provide refunds in the event they cancel flights." Opp. at 13. Resolving these contractual ambiguities in Plaintiff's favor at this stage of the litigation, the Court concludes that Plaintiff's alleged injuries fall "within the scope of [Defendants'] contractual obligations." *Cox*, 786 F. App'x at 285; *see Ide v. Brit. Airways PLC*, 529 F. Supp. 3d 73, 85–87 (S.D.N.Y. 2021) (finding that the ADA did not preempt breach-of-contract claims for plaintiffs whose flights were canceled during the Covid-19 pandemic); *see also infra* Section V (concluding that Plaintiffs have stated a claim for breach of contract). Plaintiff's breach of contract claim—that he is due a complete refund for his tickets—is plausibly encapsulated within the contract he entered with Defendants, as set out by the terms of that contract. Therefore, Plaintiff's breach of contract claim is not preempted.

The same cannot be said, however, for Plaintiff's conversion and unjust enrichment claims. As Plaintiff underscores himself, his conversion claim "goes beyond compensatory

damages for the value of the unrefunded tickets." Opp. at 23. Plaintiff contends that Defendants "wrongfully retained and controlled monies belonging to" him, earned interest on that money, and "deprived" him of the opportunity to do the same. *Id.*; Compl. ¶¶ 57–60. This claim extends far beyond the parties' own contract. *Cf. Wolens*, 513 U.S. at 229 ("A remedy confined to a contract's terms simply holds parties to their agreements."). Therefore, his state-law conversion claim is preempted by the ADA. *See Merhi v. Bullion Exchanges, LLC*, No. 23-CV-4577 (JPO), 2024 WL 4265753, at *4 (S.D.N.Y. Sept. 23, 2024) ("the ADA preempts state-law conversion claims").

Plaintiff's unjust enrichment claim is also preempted by the ADA because it requires the Court to look beyond the "privately ordered obligations" in the parties' "self-imposed" contract. *Wolens*, 513 U.S. at 228. "Unjust enrichment is an equitable claim, based on a legal fiction created by courts to imply a contract between the parties." *In re LATAM Airlines Grp. S.A.*, No. 20-11254 (JLG), 2022 WL 3965697, at *11 (Bankr. S.D.N.Y. Aug. 31, 2022), *aff'd*, No. 22-CV-8068 (ER), 2023 WL 4741335 (S.D.N.Y. July 25, 2023). Plaintiff's unjust enrichment claim therefore necessarily extends beyond the bargain that the parties negotiated themselves. *See In re Latam Airlines Grp. S.A.*, 2023 WL 4741335, at *7 (finding that an unjust enrichment claim is preempted, and concluding "that the *Wolens* exception does not apply here"); *see also Gordon v. United Cont'l Holding, Inc.*, 73 F. Supp. 3d 472, 480 (D.N.J. 2014) ("It is well settled that claims against airlines for unjust enrichment fall within the ADA's preemption clause.").

Plaintiff also fails to defend his conversion and unjust enrichment claims against Defendants' contention that they are preempted by the ADA. Accordingly, Plaintiff's conversion and unjust enrichment claims are preempted by the ADA. His breach of contract claim, however, survives.

## V. Plaintiff Plausibly Alleges a Breach of Contract Claim

Now, the Court considers whether Plaintiff has failed to state his claim for breach of contract, as Defendants contend. "Under New York law, there are four elements of a cause of action for breach of contract: (1) the existence of a contract, (2) performance of the contract by one party, (3) breach by the other party, and (4) damages suffered as a result of the breach." *Ide*, 529 F. Supp. 3d at 82 (citing *Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 320 (S.D.N.Y. 2012)). The parties agree that the allegations in the Complaint satisfy the first two elements. The parties also agree that the Conditions of Carriage are incorporated into their contract. *See* MTD at 10–11; Opp. at 13. But Defendants argue that Plaintiff has not plausibly alleged a breach. MTD at 9–13.

Defendants rely on the tickets' Fare Rules to underscore that Plaintiff's tickets were non-refundable. MTD at 10 ("The COC states that a refund will only be issued if authorized by the applicable Fare Rules." (citing COC § 12.1.1)) Put simply, Defendants argue, "because the COC provides that refunds are to be issued in accordance with a passenger's Fare Rules, and the Fare Rules attached to Plaintiff's ticket state that his ticket was non-refundable, Plaintiff has failed to state a claim for breach of contract." *Id.* at 11; *see* ECF No. 20-1.

However, Plaintiff points to numerous sections of the COC that plausibly call Defendants' straightforward argument into question. *See* Opp. at 13–16. Specifically, Plaintiff highlights the COC provision that makes clear that when "you are prevented from traveling due to Force Majeure," the airline "will at our discretion either make a refund within a reasonable time or provide you with a credit of the non-refundable amount of the fare for future travel on us." COC § 4.1.4(a).

The Covid-19 pandemic is very plausibly a Force Majeure event as defined by the COC: an "extremely unusual and totally unforeseeable circumstance[] beyond your control, the consequences of which could not have been avoided even if all due care had been exercised." COC at 7; *see JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 125 (2d Cir. 2022) ("[T]he COVID-19 pandemic and government shutdown orders are exactly the sort of events that fall within the force majeure clause as events 'beyond [the] reasonable control' of either party."); *Goldberg v. Pace Univ.*, 88 F.4th 204, 212 (2d Cir. 2023) ("[T]he pandemic falls under the Emergency Closings provision's catchall protection for 'unforeseen circumstances' 'beyond the University's control.'"). Defendants do not dispute as much. *See generally* Reply. Instead, they argue that the Force Majeure clause applies exclusively when the Force Majeure event "affects only *the* passenger" seeking a refund—and not, presumably, when it affects multiple passengers. Reply at 5 (emphasis added).

But Defendants' reading is strained; that the provision is written to address one passenger ("you") does not negate its application to other passengers. And, besides, the Covid-19 pandemic *did* affect Plaintiff; that he would have to have been the "only" person affected by the pandemic for the Force Majeure clause to take effect is far-fetched. Therefore, Plaintiff was plausibly eligible for either a "refund within a reasonable time" or "a credit of the non-refundable amount of the fare for future travel on [Defendants]." COC § 4.1.4(a).

Plaintiff also highlights a section of the COC that provides that "Non-Carrier Imposed Surcharges will always be refundable," even for non-refundable tickets. *Id.* § 4.1.3. Plaintiff therefore possesses multiple plausible avenues for relief.

Additionally, the COC explicitly states that its "provisions governing any damages, compensation, cancellations, delays and denied boarding are set out in the [Montreal]

Convention and, where applicable, Regulation (EC) 261/2004." COC § 11.4.1. Although Defendants dispute whether these and other extrinsic regulations should be considered—and, if considered, what they would portend for Plaintiff's claim—the Court need not decide these questions at this stage. *See* MTD at 11–13; Opp. at 14–15; Reply at 6. As discussed above, "[c]ourts 'are not obliged to accept the allegations of the complaint as to how to construe [the contract], but at this procedural stage . . . should resolve any contractual ambiguities in favor of the plaintiff.'" *Deutsche Bank AG*, 234 F. Supp. 3d at 533 (quoting *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005)). Resolving these contractual ambiguities in Plaintiff's favor, these extrinsic guidelines and regulations provide Plaintiff with additional—possible—paths for recovery.

"Thus, if the pleading is sufficient and the plaintiff has an arguable claim under the contract, then the claim should not be dismissed." *Id.* (citing *Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 56 (2d Cir. 2012)). That is the case here. Plaintiff has pointed to various provisions in the COC that are sufficient to support a plausible claim. Accordingly, Plaintiff has stated a plausible breach of contract claim.

**VI. Plaintiff's Class Claims Survive**

Defendants next argue that the Court should strike Plaintiff's class claims because (1) Plaintiff lacks standing to represent the proposed class, and (2) the class itself contains members lacking Article III standing. MTD at 20–24. These arguments are unavailing.

First, Plaintiff has Article III standing to bring this suit—he has "a personal stake in the case." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (internal quotation marks and citation omitted). That is, Plaintiff has shown "(i) that [he] has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant[s], and (iii)

that the injury likely would be redressed by the requested judicial relief." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). Construing the allegations in Complaint as true, Plaintiff suffered and continues to suffer a financial loss due to Defendants' actions, and the Court has the ability to redress his injuries. *See supra* Section II. Additionally, as discussed above, Plaintiff's claims are not moot. *See id.*

Second, Defendants' arguments about the scope of the class itself are "procedurally premature." *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012). In this Circuit, "[m]otions to strike are generally looked upon with disfavor." *Id.* (quoting *Chenensky v. N.Y. Life Ins. Co.*, No. 07-CV-11504 (WHP), 2011 WL 1795305, at *1 (S.D.N.Y. Apr. 27, 2011)) (internal quotation mark omitted). "'[I]t requires a reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.'" *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 462 (S.D.N.Y. 2013) (quoting *Chen-Oster*, 877 F. Supp. 2d at 117); *see also Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 573 (S.D.N.Y. 2012) ("[D]istrict courts in this Circuit have frequently found that a determination of whether the Rule 23 requirements are met is more properly deferred to the class certification stage, where a more complete factual record can aid the court in making this determination.") (collecting cases).

In particular, "a motion to strike class claims is considered premature if the issues raised are 'the same ones that would be decided in connection with determining the appropriateness of class certification under Rules 23(a) and 23(b).'" *Kassman*, 925 F. Supp. 2d at 464 (quoting *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, No. 06-CV-6198 (LAK) (JCF), 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008)). That is precisely the case here. Defendants' arguments

about the scope of the putative class—including when each potential class member purchased their ticket, whether they have been issued a refund, and whether their tickets were non-refundable—"are 'exactly the sort[s] of issue[s] that would be litigated and decided in the context of a motion for class certification.'" *Id.* (quoting *Chen-Oster*, 877 F. Supp. 2d at 117).

Accordingly, Defendants' motion to strike Plaintiff's class claims is denied "without prejudice to [their] ability to oppose class certification on these same grounds" at a later date. *Id.* at 464–65 (quoting *Winfield*, 842 F. Supp. 2d at 574). Plaintiff's class claims survive.

## VII. The Court Denies Leave to Amend

Finally, the Court denies Plaintiff leave to amend the dismissed claims. "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, further amendment would be futile. Plaintiff's conversion and unjust enrichment claims are preempted by the ADA—alternative pleading would not alter the outcome. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (stating that requests to replead should be denied when "[t]he problem with [the pleading] is substantive" and "better pleading will not cure it"). Therefore, the Court denies Plaintiff leave to amend the dismissed claims.

## CONCLUSION

For the reasons stated above, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss. Plaintiff's breach of contract claim survives. His conversion and unjust enrichment claims are preempted by the ADA and are dismissed. Meanwhile, Defendants'

motion to strike Plaintiff's class claims are denied without prejudice to their ability to oppose class certification at a later date. Lastly, the Court denies Plaintiff leave to amend the dismissed claims.

By separate Order, the Court will schedule an initial pretrial conference and direct the parties to submit a joint letter and proposed case management plan.

The Clerk of Court is respectfully directed to terminate ECF No. 18.

Dated: September 29, 2026
White Plains, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge